Let's wait a minute. Let everyone get settled. Okay, Miss Riley. Good morning, Judge Smith, Judge Inglehart, Judge Ramirez and may it please the court. My name is Marion Riley and I represent the plaintiff appellant, Mr. Emilio Cantu Silva, in the present appeal. Your Honor, there are three reasons why this court should reverse the decision of the court below. The first is that the discretionary function exception does not shield the officer's conduct in this case because the two-pronged test set forth in Gobert v. United States has not been satisfied. Second, the discretionary function exception does not apply to unconstitutional conduct. And finally, trial counsel did not waive the unconstitutionality defense on appeal. The decision to proceed on the FTCA claim did not have any bearing on the court's need to consider the constitutionality of the conduct to determine the applicability of the exception. Your Honors will note that I am taking the issues today slightly out of order than I have briefed them and I'm doing that by strategic design. I recognize that the question about the constitutionality of the conduct is the subject of a circuit split and I recognize that there may be some hesitancy on behalf of this court to come down on decision one way or the other. Nevertheless, that issue is an important one and I do plan to address it, but I'd like to first... Can we go back to, I want to make sure that we're talking about the same claims here. It is a, at bottom, a negligence case. Is that a correct statement? That is correct. It is an FTCA claim. Counsel did not elect to proceed on the Bivens claim, but with respect to the second issue that I presented for the court, the court would still need to consider the constitutionality of the conduct to determine whether the defense, the discretionary... But the negligence claim is that the law enforcement officer, in brandishing his sidearm, negligently discharged it while apprehending this gentleman. Is that correct? If I may clarify, the negligent conduct was the fact that the firearm was discharged and my client was shot. That is actually the negligent conduct that is irrelevant for this court's determination and the consideration of the discretionary function exemption. What is, is there any intent element that we need to consider before we get into your arguments? Is there any intent element? You're not making an excessive force claim, though. Not making an excessive force claim. Now, generally for FTCA purposes, intent is irrelevant to discussion. It is relevant here, though, and the reason that it's relevant here is because there is a requirement of intent under the Border Patrol policy. That is an issue here. And so that first prong of the Gobert test looks to whether there was the exercise of a judgment or choice. But it's established that if there is a mandated prescribed policy that an officer has to follow a certain course of conduct, then it cannot be a question of choice. So here we do, in fact, have an express Border Patrol policy that does incorporate and consider the officer's intent. And if I may quote it, Your Honor, it appears on page 711 of the record. And that Border Patrol policy states, and I quote, agents discharging of a firearm at a person shall be done only with the intent of stopping that person from continuing the threatening behavior that justifies the use of deadly force. So for purposes of this particular case and for purposes of the Border Patrol policy at issue here that governed Agent Mendoza's conduct, intent is relevant. And it's further important because I recognize what the lower court did in discussing the first prong and second prong of Gobert is the court focused on the point in time that Agent Mendoza withdrew his firearm as the point in time that was relevant for the purposes. That's just the start of the analysis, though. It's not the end. Because Agent Mendoza actually then proceeded to discharge that firearm and it actually hit my client. All of those factors have to be considered. And I will concede and I recognize it seems there's like there's a disconnect, though, maybe you can help me help us with. Certainly. If he's brandishing the firearm and during the course of apprehending the plaintiff in this case, the firearm goes off accidentally or negligently. He's not discharging a firearm as per the manual. It discharged accidentally. So it really is truly a negligence case from start to finish. I'm not quite sure how we leap back into the manual to discuss intent if he never had the intent. Seems like it's undisputed that he never had the intent to put his finger on the trigger and pull. The firearm went off and unfortunately hit the plaintiff in this case. So I would say yes, Your Honor. To the extent that the court determines it was not intentional, we would contend that the discretionary function exception shouldn't apply for that reason alone because we don't have the exercise of a choice. But nevertheless, if the court were to elect to consider that analysis and go down the question of whether or not the discretionary function exception implies and whether there was a choice, then we have to consider all of the factors, not just drawing the firearm, but what actually happened after that officer did draw that firearm. Didn't the district court find after a bench trial that the agent's testimony that the discharge was accidental was credible? He did, Your Honor, yes. And again, that would lead to two points. First, that it wasn't a question of choice. And second, it would also prove definitively that that Border Patrol policy that requires those two elements, that requires the intent and the requirement of intent to stop a continuing threatening behavior, be met. His admission that that didn't occur is a clear-cut admission that there was a violation of that Border Patrol policy. How is it an admission when he testified that the reason that he drew his gun, which is the point the district court focused on, was that two individuals stopped and turned to him in what he perceived to be a threatening stance? Yes, Your Honor, and that's true, and that's what the district court did. And I will concede that some of that pre-shooting conduct may well have, in fact, been discretionary. For instance, I'll concede that the decision to chase the immigrants, that was a discretionary one. The decision to attempt to apprehend those suspects, again, a discretionary one. The decision whether to use force at all, again, a discretionary one. I would analogize the situation to the officer standing in the center of a circle and him having available to him a variety of different force options, one of them being a handgun, one of them being a baton, one of them being verbal commands to stop the behavior. Once the officer, though, elects to take a particular course of action, here being the use of deadly force, the officer steps outside the circle and walks the straight line of the conduct that that officer has chosen. But how do you get there without any evidence of intent, which is what I think my colleague keeps pointing out? The evidence of intent, he intended to withdraw the firearm, we know that. But the question for whether or not he had a discretionary choice at the point in time that he withdrew that firearm, that's where we contend that he didn't have a choice. Once he chose to withdraw the firearm, he was bound by mandatory border patrol policy. He didn't have the discretion to use that firearm unreasonably, and he didn't have the discretion to use that firearm except as prescribed by the statute. And that statute, again, requires that if that firearm was to be discharged, it could only be discharged if there was an intent to stop an individual who is continuing the threatening behavior. But isn't this the classic example of why you need a discretionary function exception? The facts are changing on the ground. He's chasing two individuals, they stop and turn towards him, so he draws his weapon, then they turn and start running, and he has to decide what to do. How is that not an example of...? The question of the officer's actions on the ground, we don't contend that the officer doesn't have the ability to make split-second decisions on the ground. And again, that's why he would have the discretionary choice whether to use force in a particular instance. But once he makes the election, he has to abide by the policies that are in place. At some point in time, that discretion has to end and required policies take over. And here the required policies took over and Agent Mendoza didn't follow with the letter of the policies themselves when he inappropriately discharged that firearm. And there have been a line of cases that discuss intent and they talk about the interplay between the exercise of a discretionary choice and mere carelessness. For instance, there are some cases out of the Ninth Circuit, one of them being Carter versus United States. This is a Ninth Circuit case. And there the court addressed whether or not a post office's address verification service was a discretionary function. There the clerk had to transcribe some research notes and made an error in transcribing the notes, which resulted in federal agents invading the wrong house. The court determined that although there was a discretionary function in transcribing the notes, the actual transcription of the error was not a discretionary function. It was instead caused by simple carelessness. There's the difference between the planning stage and the implementation stage. Once a course of action is implemented, if there was some improper conduct, whether it be a mistake, whether it be intentional, if there was something that went wrong in the course of implementation, then an officer can be held liable for that if there's a specific policy. And here we do in fact have that specific policy that requires what has to happen if that firearm was to be discharged. That again wasn't done in the instant case. And because that policy wasn't satisfied, we don't have satisfaction of that first prong of the Gobert test. We also don't have satisfaction of the second prong of the test. And that's because his conduct was not the type that was intended to be shielded by the discretionary function exception. And we would again indicate and rely upon the fact that... Is it fair to say that, are you arguing that a mistake or a negligent act is never discretionary? No, not necessarily, Your Honor. I mean, there could be some circumstances. If there was a mistake, for instance, in the exercise of the implementation of it. So for instance, if there was a mistake in his discretionary judgment, that would be covered by the discretionary function exception. But there... Are you arguing that he did not exercise discretion in whether or not to draw the firearm? No. We believe that that was an exercise... He had a choice based on his training. He was to decide whether he should draw the firearm. And ultimately, he could decide whether or not to fire the firearm based on his training. But in this case, the court found, and it sounds like you're not contesting, that the firearm discharged by accident or mistake. Correct? There was conflicting testimony in the record, Your Honor. But that's what the court found, and that was based on testimony that was found credible by the district court. So I don't know. I mean, obviously, our standard of review on fact-finding is what it is. Correct. But assuming that those are the facts, then he didn't discharge the firearm. The firearm discharged through negligence that he may or may not have committed. Correct. Let's assume he did commit it. He was negligent, and the firearm went off by accident. At what point does he depart from the discretionary function exception that he enjoyed when he pulled the firearm? At the point in time that that firearm discharged. Because if he was handling a firearm, and if he knew that that firearm had to be handled in a certain way according to the policy, which he did know because he had those policies available to him, if that, when that firearm discharged, the policy said, this, again, is what has to occur when a firearm discharged. That didn't occur. That was a violation of policy. And where we have those clear policy standards and mandates, we don't have the discretionary function exception apply. It was not a question of choice. It was not a question of judgment for Agent Mendoza. He was required to discharge that firearm only if he had the intent to stop someone. And the firearm, again, discharged, and he didn't have that intent. And there was no threatening behavior on behalf of Mr. Cantu-Silva, which is something that is admitted in the record with respect to my client. Which brings me, Your Honors, to the second reason that this court should reverse the decision of the court below. And that is that the discretionary function exception does not apply to unconstitutional conduct. And as I mentioned previously, I recognize that this is a question of a circuit split amongst the circuits. The First, the Third, the Eighth, the Ninth, and the D.C. Circuit have all recognized that where there is unconstitutional conduct, it does create a categorical bar to the discretionary function exception applying. What is the unconstitutional conduct here if you've already told us that you're not asserting an excessive force claim? We can still look at the unconstitutional conduct as to whether that force was reasonable or not, the amount of force was reasonable, even though we don't have a Bivens claim. A Bivens claim for the unconstitutional conduct is not necessary in addition to the FTCA claim. So because we're not making an affirmative cause of action under Bivens, we don't have to, we're not subject necessarily to the same standards as we are when we're talking about the defense of the application of the discretionary function exception. So the court can still look to the conduct that we've alleged in the instant case and whether or not that underlying conduct is unreasonable or not. And we would contend based upon the facts that the court has before it and those that were before the district court, it does reflect that Mr. Mendoza's conduct was unreasonable and was as pled, plausibly pled by the plaintiffs, a use of excessive force and unconstitutional conduct. And along the lines of what the majority of circuits have held with respect to unconstitutional conduct, this is a categorical bar to FTCA claims. And the rationale for that, of course, is simple in that an individual, an officer, an agent, doesn't have the discretion to violate the Constitution. Those mandates are absolute and they're unequivocal. There are rules that officers have to follow in following out, carrying out their particular activities and conduct, and the constitutionality is certainly one of them. Furthermore, although the government contends that we have waived that issue on appeal, I would again point out that there is a difference between an affirmative cause of action, an affirmative claim for bivens and unconstitutional conduct, and the requirement that we would have to show as a defense to the application of the discretionary function exception. The latter was fully preserved. And of course, even if this court were to determine that it was not, which we would respectfully contend that it was preserved, the court would still have the ability to consider the issue because it involves a purely legal question, because it's one that involves the subject matter jurisdiction of the court, and because if the court were not to consider the issue, we would contend it would result in a substantial miscarriage of justice. So the constitutional conduct should still be considered with respect to that element. However, ultimately, the court could either determine that the two prongs of Gobert were not satisfied, either of those two prongs were not satisfied, or determine that the unconstitutional conduct creates a categorical bar. And under either scenario, it would require a reversal of the lower court's decision. Therefore, Your Honor, because the discretionary function exception does not apply, because neither prong of the Gobert test has been satisfied, and because the unconstitutional conduct prohibits application of the discretionary function exception, we would respectfully ask that this court reverse the decision of the court below. Thank you, Your Honors. Thank you, Ms. Riley. You've saved some time for rebuttal. Ms. Parker? Good morning. Lisa Luce Parker on behalf of the United States of America. May it please the court. United States Customs and Border Protection policy specifically provides that a Border Patrol agent's act of establishing a grip on his weapon, drawing his weapon, or pointing his weapon does not constitute deadly force. The policy also specifically provides that a Border Patrol agent may use intermediate force when reasonable and necessary in order to prevent escape or to compel enforcement with a lawful order. So when Agent Mendoza drew his weapon because he felt that two suspects made a threatening gesture toward him, he was within the bounds of the CBP policy to do so. Yet, before the district court proceedings, Silva argued that Agent Mendoza violated the deadly force policy when he drew his weapon. The focus in response to the government's motion dismissed by Silva was not on the actual accidental shooting, but rather on the conduct of him drawing his weapon and deciding not to reholster it. And the district court found this, as Judge Ramirez pointed out, found the testimony to be credible, such that those two specific actions were discretionary and therefore the Federal Tort Claims Act did not apply. Therefore, this case is not about whether a constitutional violation bars a discretionary function exception. Silva never pleaded in his complaint that Agent Mendoza's conduct amounted to a constitutional violation. He never specified before the district court what constitutional right Agent Mendoza violated, leaving the district court only to assume what the argument was, and therefore it was proper for the district court to hold that any type of constitutional violation argument was abandoned at best. So the true issue before the court today is whether Agent Mendoza's conduct in drawing his weapon and deciding not to reholster it is within the discretionary function exception. And I'll proceed by listing the three reasons why the district court's holding was correct. First, the district court began by looking at what the conduct at issue was. In these type of cases, in order for the discretionary function analysis to work, the conduct at issue must be specifically defined. Here, because Silva, and this is to clarify something that was just made on the record, there was never a Bivens claim. Instead, Silva brought three intentional tort claims for battery assault and intentional infliction of mental distress, as well as a negligence claim. Those three intentional tort claims were abandoned before the Bivens trial in this case. And in those allegations, Silva just generally pleaded that Agent Mendoza shot Silva without provocation. Therefore, the district court looked to the party's arguments at the motion dismissed to determine what the conduct at issue was. Specifically, on the record, page 1620, Silva claimed that Agent Mendoza should not have had his firearm out in the first place. And he makes similar representations in his response to the motion dismissed. We also contended that a relevant aspect of the conduct was his decision to draw his weapon. Therefore, the district court found that the first relevant aspect of the conduct at issue was the drawing of the weapon. Second, throughout the response to the motion dismissed, Silva also contended that the conduct at issue was the unsafe way Agent Mendoza mishandled his firearm. Specifically, Silva attempted to argue that another relevant aspect of the conduct at issue was how Agent Mendoza handled his gun without due care. The district court correctly rejected that broad characterization of a discretionary function. As was pointed out earlier, negligence is not relevant. And to consider the conduct to be his mishandling of the gun without due care would collapse the discretionary function exception into a negligence analysis, which would be improper under the statute. So therefore, the district court was correct in stating that those were the two relevant conduct at issue. And just on a quick note, because Silva now argues before this court that Agent Mendoza violated the deadly force policy when he accidentally shot Silva. But this argument was not directly asserted before the district court, and it's not properly before this court today. On to the second point. Well, the second point being the first step of the discretionary function analysis, now that the conduct at issue has been defined, is whether that conduct is discretionary. Because CBP policy allowed for Agent Mendoza to draw his weapon because he felt threatened, it was within his discretion to do so. And because CBP policy did not prohibit him from keeping his weapon out, nor did the CBP policy require him to reholster it as he continued his pursuit of these suspects, this was discretionary conduct. And Silva contends a general policy violation based on safe handling of guns, and this is found on pages 41 to 42 of their brief. There is no specific basis for this general policy that Silva proposes, and as required by Goebert, there has to be a federal statute regulation or policy specifically prescribing a course of conduct in order for Silva's argument to make sense. Silva doesn't provide any citation to a specific federal statute policy or regulation when it talks about this general gun safety policy that Agent Mendoza should have followed when he was handling his gun. And the only basis for this argument is actually testimony of Agent Mendoza during his deposition when Agent Mendoza generally talked about how to handle a gun. But a close review of that testimony, which is found on the record on page 1745, shows that what Agent Mendoza was actually talking about was gun safety procedures at a gun range while he was taking his qualifications exam. Silva has not connected how general gun safety procedures at a gun range directly connect with Agent Mendoza's circumstance of being in a rural area attempting to pursue 10 undocumented immigrants. So another point I wanted to add in direct response to Silva's argument is that the negligence inquiry would collapse into the discretionary function inquiry if the court were to look at the accidental shooting. Because under the plain language of the discretionary function exception, it applies whether or not the discretion involved be abused. And there are cases cited in the government's brief on pages 19 to 20 when an agent was properly found to be using his discretion in order to pursue a suspect. And that discretionary conduct led to an accidental injury to the suspect. In those cases, specifically in the Coleman case out of the Middle District of Florida, the court rejected an argument that Silva is making today that the accidental shooting would take this out of the realm of discretionary function exception. And on the second requirement of the discretionary function exception, there is a strong presumption under Goebert that if the agency policy gave the discretion to the federal agent, then there are public policy considerations at play that would satisfy the second prong. Again, because CBP policy gave Agent Mendoza that discretion, there is a public policy considerations on how he can affect an arrest and how he should respond to threatening behavior. So the district court was correct in finding that the second prong of this discretionary function test was satisfied. Specifically, if the court were to review what Agent Mendoza did that day under a negligence inquiry, which is the only claim left in this case, it would second guess Agent Mendoza's decisions on how he should respond to threatening behavior when he is outnumbered 10 to 1 by these suspects. It would question what he did, when he did it, and whether he should have taken out his gun in the first place. That would make it an improper inquiry under the discretionary function exception. Otherwise, if we were to look at the accidental shooting, although an unfortunate circumstance, it would bring to light whether Agent Mendoza should have hesitated to draw his gun, even though he felt threatened, in some unlikelyhood that he was going to trip and fall and somehow discharge his weapon. And just to quickly note, because Sylvan noted on appellant's brief on pages 38 to 39, that Agent Mendoza's conduct would not have public policy considerations because it was an operational conduct. This proposition was directly rejected by the Supreme Court in Goebert, in which the Supreme Court said, regardless of whether the conduct is operational or policy or planning, or at the policy or planning level, discretionary function can still apply. Therefore, there is no relevance to whether Agent Mendoza's conduct that day was operational. And finally, to address Sylva's point that the constitutional violation bars discretionary function exception here, as Sylva noted, this circuit has not recognized that exception. But most importantly, this case is not the appropriate case for this circuit to make that decision. Sylva never pleaded in his complaint that Agent Mendoza's conduct amounted to a constitutional violation. In fact, the first time it was suggested that there could be a constitutional violation was in Sylva's briefing before the district court on generally on discretionary function. This was filed before his response to the government's motion to dismiss. And in that briefing, Sylva simply argued that Agent Mendoza's conduct exceeded the scope of his authority as designated by statute or the Constitution. There was no constitutional violation specified by Sylva. And in a similar situation, in a case called Spots v. United States, which is cited to on the government's brief on page 22, while this case has distinguishable facts, it also involved the Federal Tort Claims Act. And in that case, the plaintiffs attempted to make a similar argument that the constitutional violation barred the exception in that case. And in the pleadings, the plaintiffs actually asserted that the conduct at issue was cruel and unusual and specifically stated that it was a constitutional tort. This court rejected that argument that there was a constitutional violation because it was never pleaded nor argued specifically that the Eighth Amendment precluded application of the discretionary function exception. Like Sylva, those plaintiffs focused and even raised the constitutional argument for the first time during the appeal. So at most, Sylva abandoned that argument when he didn't even reassert it in direct response to the government's motion to dismiss. And Sylva also relies on dicta from this court's case of Sutton v. United States, in which the court suggested that a constitutional violation may bar discretionary function if the agent violated or exceeded the scope of his authority under a statute or the Constitution. That statement is dicta because a constitutional violation was actually not at issue in Sutton and the Sutton plaintiff never alleged a constitutional violation. And similarly, in this court's decision of Sulman v. United States, which is also cited too in the government's brief, the lower court decision in that case, which was affirmed by this court, cited to Sutton and rejected such a broad proposition that a constitutional violation would bar discretionary function exception. Rather, the Sulman court clarified that DFE or discretionary function exception will only fail to protect officers when the statute governing the action gives specific direction as to any of these functions in a way that would make the acts non-discretionary. Again, Sylva has not mentioned any specific policy that made Agent Mendoza's conduct that day to be in violation under a CBP policy or otherwise exceed his scope of authority. And again, just to note that this is a negligence case. There were no plausible allegations of a constitutional violation. Yet Sylva argues on page 19 and 20 by citing to a string of circuit court cases that have recognized that a constitutional violation could bar discretionary function, but to specifically cite to one of those cases out of the D.C. Circuit, Lumiere. That case said that discretionary function would not provide a blanket immunity against tortious conduct when a plaintiff plausibly alleges a constitutional violation. Here, there is no plausible allegation of a constitutional violation when Sylva is merely asserting a negligence claim because constitutional violations under the Fourth Amendment require intentional conduct. And for those reasons, we ask the court to affirm the lower court's decision, finding that there is no subject matter jurisdiction. Thank you. Thank you, Ms. Parker. Ms. Riley for rebuttal. Two points on rebuttal, Your Honors. First, I'd like to clarify a factual misstatement made by the United States. The United States claimed that the discharge of the weapon was something that was not raised by Mr. Cantu-Sylva in the briefing below. That is not accurate. As indicated on pages 1621 through 1625 of the record, it's clear that Mr. Cantu-Sylva did contest that the discharge of the firearm was inappropriate conduct and was violative of Border Patrol policies. Mr. Cantu-Sylva further in those same pages cited the discharge policy, the one that's at issue here, and the one that we contend was violated, which prevents the application of the first prong of Gobert. And second, Agent Mendoza's drawing of the weapon is only the start of the analysis. It's not the end. The analysis cannot prematurely stop at the point in time that he withdrew the firearm. Otherwise, every situation which an officer draws a firearm could be determined to be a discretionary function, regardless of what that officer does with the firearm once it's withdrawn. And this is something that simply was not envisioned by the court in Gobert. As indicated, it's a footnote in Gobert, footnote 7, and I cite that because it gives an example of when certain conducts can be determined to be within the discretionary function exception and when it's not. And there the court looked to an example of officials driving a vehicle. And the court stated, and I quote here, if one of the officials involved in this case drove an automobile on a mission connected with his official duties and he negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decision in exercising that discretion can hardly be said to be grounded in regulatory policy. The same is at play in the instant case. There was no discretion that Officer Mendoza had with respect to discharging that firearm. The policy was clear and he violated it. Therefore, for those reasons, we would ask that this court reverse the decision of the court below. All right, thank you, Ms. Riley. Thank you, Your Honor. Your case for your submission. Last case for today, Nguyen v. Jaddu.